```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
SCIENTON TECHNOLOGIES, INC., NI GROUP,
INC., SECURE-IT, INC.,

                        Plaintiffs,
                                                MEMORANDUM & ORDER
        -against-                               04-CV-2652(JS)(ETB)

COMPUTER ASSOCIATES INTERNATIONAL INC.,

                        Defendant.
----------------------------------------X
APPEARANCES
For Plaintiffs:     Dennis P. Stolle, Esq.
                    Matthew S. Barr, Esq.
                    Robert Dean MacGill, Esq.
                    Scott E. Murray, Esq.
                    Barnes & Thornburg LLP
                    11 South Meridian Street
                    Indianapolis, IN 46204

                    Panagiota Betty Tufariello, Esq.
                    The Law Offices of P.B. Tufariello, P.C.
                    25 Little Harbor Road
                    Mt. Sinai, NY 11766

For Defendant:      Jonathan N. Francis, Esq.
                    Michael D. Schissel, Esq.
                    Anthony D. Boccanfuso, Esq.
                    Erik Christopher Walsh, Esq.
                    Pamela Addison Miller, Esq.
                    Arnold & Porter LLP
                    399 Park Avenue
                    New York, NY 10022

                    Kevin Patrick Mulry, Esq.
                    John P. McEntee, Esq.
                    Farrell Fritz, P.C.
                    1320 Rxr Plaza
                    Uniondale, NY 11556

SEYBERT, District Judge:
```

Pending before the Court is Plaintiffs Scienton

Technologies, Inc., NI Group, Inc., and Secure-IT, Inc.'s (together, "Plaintiffs" or "Scienton") motion for reconsideration of the Court's September 25, 2012 Memorandum and Order (the "Summary Judgment Order," Docket Entry 347) granting in part and denying in part Defendant Computer Associates International Inc.'s ("Defendant" or "CA") motion for summary judgment. For the following reasons, Plaintiffs' motion is DENIED.

BACKGROUND

The Court assumes familiarity with the underlying facts and procedural history of this case, which are discussed in detail in the Summary Judgment Order. In brief, Plaintiffs commenced this action in June 2004 against Defendant asserting claims for, inter alia, misappropriation of a trade secret. Plaintiffs, however, had difficulty articulating what their alleged trade secret was and what they believed Defendant misappropriated. (See Summary Judgment Order 11-12.) On July 28, 2005, Defendant moved for an order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure requiring Plaintiffs, as a condition of proceeding with trade secret discovery, "to identify with adequate specificity the trade secrets they claim were misappropriated." (Notice of Mot., Docket Entry 41.) In opposition, Plaintiffs asserted that they had already defined their alleged trade secret:

2

> Scienton's trade secrets consist not of a piece of computer source code, a discrete formula, or a single software program. Rather, it is far more sophisticated. Scienton created a complex methodology for enterprise security by combining numerous elements and programs into a powerful and unified security solution previously unknown to the industry. Scienton used certain of CA's existing programs as some of the building blocks because of the relationship it has entered into with CA. In effect, Scienton conceived and disclosed ways to use CA's programs in combination with its own and others that neither CA nor anyone else in the field had foreseen or understood.

(Pls. Opp., Docket Entry 50, at 6.) Magistrate Judge Michael L. Orenstein held a hearing on the motion on November 2, 2005, where Plaintiffs' counsel, in describing their alleged trade secret, stated that "[i]t's not the source code that's at issue. It's the overall unique <u>concept</u> of combining all of these elements . . . ." (Walsh Decl. Ex. 48, Nov. 2, 2005 Tr. 27 (emphasis added); <u>see</u> <u>also</u> Hunt Aff. in Opp., Docket Entry 48, ¶¶ 4-6 (describing the trade secret as a "conception" and a "vision"); <u>cf.</u> Zivic Aff. in Opp., Docket Entry 49, ¶ 6 (describing the trade secret as "architecture" and comparing it "building a Frank Lloyd Wright home").)

Judge Orenstein did not grant Defendant's motion but instead ordered Defendant to provide Plaintiffs with working copies of the programs that Plaintiffs believed incorporated their alleged trade secret and ordered Plaintiffs to identify,

3

with specificity, which aspects of their trade secret were in fact incorporated in those programs. (Walsh Decl. Ex. 48, Nov. 2, 2005 Tr. 42.) Defendant provided Plaintiffs with working copies of their programs, and, in response, Plaintiffs served a letter, drafted by counsel, giving a "summary" of the "<u>concepts</u> that [Plaintiffs] say[] [were] stolen." (Walsh Decl. Ex. 49, Jan. 18, 2006 Tr. 25-26 (emphasis added).) The parties again appeared before Judge Orenstein on January 18, 2006 to discuss the sufficiency of Plaintiffs' response. Judge Orenstein held that counsel's letter was "not what th[e] Court ordered in November. [The] Court ordered specificity, not [Plaintiffs'] interpretation of what [they] felt was enough." (Walsh Decl. Ex. 49, Jan. 18, 2006 Tr. 28.) Thus, he ordered Plaintiffs to provide a more detailed explanation of their alleged trade secret to Defendant. (Walsh Decl. Ex. 49, Jan. 18, 2006 Tr. 33.)

On March 6, 2006, Plaintiffs produced a document titled "Trade Secret Disclosure," which described their alleged trade secret as follows:

> a unique and previously unknown collection, combination, refinement and enhancement of a number of previously unrelated computer programs and software functionalities to create an 'enterprise security solution' encompassing physical and digital security ('Scienton's ESS') and having far greater capabilities than any prior single security

4

>           system   or   pre-existing   combination   of
>           security systems.

(Walsh Decl. Ex. 6, Trade Secret Disclosure at 1.)  At a hearing before Judge Orenstein on March 16, 2006, Plaintiffs' counsel clarified that their trade secret was "not the how [sic] you particular[ly] wire one program to the other . . . , it's the actual combination of programs 1, 4, and 6 to perform a particular function."  (Walsh Decl. Ex. 50, Mar. 16, 2006 Tr. 10; see also id. at 10-11 ("How they operate together is not the trade secret.").)  Judge Orenstein ultimately found that this Trade Secret Disclosure was sufficient for discovery to proceed.

Defendant moved for summary judgment on February 27, 2012, arguing, inter alia, that Plaintiffs failed to articulate a legally cognizable trade secret.  (Def. Mot., Docket Entry 308, at 15.)  Specifically, Defendant argued that Plaintiffs' trade secret was insufficiently vague and otherwise not actionable because a trade secret may not "consist merely of an idea to combine publicly known products into a single product, without defining how those products will work together."  (Id. at 15-19.)  In opposition, Plaintiffs, completely contradicting their earlier representations to Judge Orenstein, argued that its Trade Secret Disclosure did identify how the different products work together.  (Pls. Opp., Docket Entry 339, at 19.)

5

The Court granted summary judgment in favor of Defendant on the trade secret claim. (Summary Judgment Order 28-32.) The Court, citing to <u>LinkCo, Inc. v. Fujitsu Ltd.</u>, 230 F. Supp. 2d 492 (S.D.N.Y. 2002), explained that because Plaintiffs' purported trade secret was the idea or concept of combining certain program functionalities--and not the source code or technical details regarding how those different programs would interact with one another--it was not entitled to trade secret protection. (Summary Judgment Order 31-32.) The most important consideration in determining whether a trade secret exists is whether the information was actually a secret, and the Court found that the secrecy of Plaintiffs' "concept"--as opposed to the source code--would have necessarily been lost once the product was placed on the market. (Summary Judgment Order 29-32.) Accordingly, the Court dismissed Plaintiffs' trade secret claims. Plaintiffs were permitted to go to trial on their misappropriation of an idea, breach of the parties' nondisclosure agreement, and unfair competition claims--which also arose out of Defendant's alleged use of Plaintiffs' "concept."

Plaintiffs now move for reconsideration of the portion of the Summary Judgment Order granting summary judgment in favor of Defendant on the trade secret claim.

DISCUSSION

The Court will first discuss the applicable standard of review before addressing the merits of Plaintiffs' motion.

I. Standard of Review

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." Liberty Media Corp. v. Vivendi Universal, S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." In re Optimal U.S. Litig., 886 F. Supp. 2d 298, 311-12 (S.D.N.Y. 2012) (internal quotation marks and citations omitted)); see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation marks and citation omitted)). It is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion. See Liberty Media, 861 F. Supp. 2d at 265. Nor is it a proper tool to raise new arguments and issues. See Lehmuller v. Inc.

Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997); In re Fosamax Prods. Liab. Litig., 815 F. Supp. 2d 649, 651 (S.D.N.Y. 2011). Further, a motion for reconsideration "is not a substitute for appeal." Morales v. Quintiles Transnat'l Corp., 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998) (internal quotation marks and citation omitted). "Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).

II. Analysis

Plaintiffs move for reconsideration on the grounds that: (1) neither party raised the issue of secrecy, nor did they cite to LinkCo; (2) although "LinkCo supports the Court's conclusion," (Pls. Recon. Mot., Docket Entry 349, at 4) Plaintiffs disagree with that court's holding; (3) Fifth and Seventh Circuit case law contradicts LinkCo; and (4) there is a question of fact regarding whether Plaintiffs' alleged trade secret would have, in fact, been disclosed upon commercialization. The Court will address each argument separately.

First, although neither party cited to LinkCo, the Court is not limited to the cases and other law cited in the

parties' briefs. See, e.g., Horvath v. Westport Library Ass'n, 362 F.3d 147, 152 (2d Cir. 2004). Further, although neither party specifically raised the issue of secrecy, Defendant did argue that Plaintiffs' alleged trade secret was not worthy of protection because it was merely the idea of combining certain functionalities to achieve a desired result, not the intricacies of how to combine those functionalities. And this conclusion was integral to the Court's holding. (See Summary Judgment Order 31.)

Second, Plaintiffs ask this Court to disregard the decision in LinkCo, which they admit is directly on point and "supports the Court's conclusion" (Pls. Recon. Mot. 4), because it is based on an improper reading of the Second Circuit's decision in Hudson Hotels Corp. v. Choice Hotels Int'l, 995 F.2d 1173 (2d Cir. 1993), abrogated on other grounds by Nadel v. Play-By-Play Toys & Novelties, Inc., 208 F.3d 368 (2d Cir. 2000). The Court disagrees. Hudson Hotels involved the "idea or concept" of a small-size, upscale hotel room or a "Microtel." Id. at 1174. The Circuit, finding that the "Microtel concept is a new product idea, nothing more," stated that "[o]nce [the plaintiff] marketed the Microtel concept . . . it could not constitute a protectable trade secret because, from that time forward, it could not be used secretly and continuously in its business." Id. at 1177-78 ("Once it is built, marketed, and

9

occupied, the features of the room would necessarily be disclosed publicly."). The Circuit noted, however, that "[i]n the pre-marketing stage, the question whether a marketing concept or a new product idea can constitute a trade secret is murkier" and instead found that the Microtel was not a protected trade secret because the plaintiff had affirmatively abandoned any claim that the idea of a small-size, upscale hotel room was novel. Id. at 1177-78. The district court in LinkCo relied on the dicta in Hudson Holding to find that the architecture of a computer software program comprised of 26-elements was not a trade secret because "[o]nce the combination of [the plaintiff's] elements is seen by the public, the system's architecture will become obvious and easily duplicated." 230 F. Supp. 2d at 499. The product in LinkCo was at the pre-marketing stage; however, this issue was not raised by the court.

Plaintiffs argue that it was improper for LinkCo to rely on Hudson Holding's dicta (and in turn that it was improper for this Court to rely on LinkCo) because it ignores the distinction between pre- and post-commercialization of a new product. However, the Circuit in Hudson Holding stated, albeit in dicta, that finding that a new product idea or concept could constitute a trade secret in its pre-marketing stage was "contrary to the holding of a leading case addressing the subject under section 757 of the Restatement." 995 F.2d at 1177

(emphasis added) (citing Richter v. Westab, Inc., 529 F.2d 896, 900 (5th Cir. 1976)). Further, other courts in New York have relied on Hudson Holding's dicta in finding that a new product idea is not a protected trade secret because, once it is marketed, the idea will no longer be a secret. See, e.g., Detsis v. Victoria's Secret Stores, Inc., No. 03-CV-5358, 2006 WL 2819586, at *6 (S.D.N.Y. Sept. 29, 2006) (finding that the novel concept of a necklace attached to bra straps was not a trade secret because it would be "readily apparent from the finished product, that once marketed, [would] become visible to all competitors to copy"); Blank v. Pollack, 916 F. Supp. 165, 175 (N.D.N.Y. 1996) (finding that a folding window crank was not a trade secret because "upon marketing and sale" the design would be "open to public inspection of all of its features"). Plaintiffs have not pointed to any decisions interpreting New York law that have found otherwise.[1]

---

[1] The two New York cases that Plaintiffs did cite do not contradict LinkCo.

Plaintiffs cite to a New York State trial court decision from 1966 discussing whether a prototype for a novel photocopier constituted a trade secret. Gen'l Aniline & Film Cop. v. Frantz, 50 Misc. 994, 272 N.Y.S.2d 600 (Sup. Ct. Broome Cnty. 1966). The court's analysis focused on the distinction between trade secret claims and patent infringement claims. The court stated that the "gravamen" of a misappropriation of trade secrets claim is "breach of confidence"--whereas a patent infringement claim is based on a policy of encouraging the development of secret processes and devices. Id. at 1001, 272 N.Y.S.2d at 608 (citing RESTATEMENT (FIRST) OF TORTS § 757, cmt. b)).

11

Third, Plaintiffs instead ask this Court to look to Fifth and Seventh Circuit precedent interpreting Texas and Illinois law. Learning Curve Toys, Inc. v. PlayWood Toys, Inc., 342 F.3d 714 (7th Cir. 2003) (applying Illinois law); Sikes v. McGraw-Edison Co., 665 F.2d 731 (5th Cir. 1982) (applying Texas law). However, Illinois has adopted the Uniform Trade Secrets Act, see 765 ILL. COMP. STAT. 1065/1, et al. (the Illinois Trade Secrets Act); Hecny Transp., Inc. v. Chu, 430 F.3d 402, 404 (7th Cir. 2005) (stating that the Illinois Trade Secrets Act is based on the Uniform Trade Secrets Act), whereas New York has not, and "Texas law [does not] draw . . . a rigid distinction between new product ideas and trade secrets," Sikes v. McGraw-Edison Co., 671 F.2d 150, 151 (5th Cir. 1982); Keane v. Fox Tele. Stations, Inc., 297 F. Supp. 2d 921, 938 (S.D. Tex. 2004) (stating that Texas does not have a separate cause of action for

---

Thus, the court found that the fact that similar photocopiers came on the market after the defendant allegedly began copying the plaintiff's prototype did not relieve the defendant of liability for misappropriation of a trade secret, because, unlike a claim for patent infringement, the "field need not be virginal" for a trade secret to exist. Id. The distinction between pre- and post-commercialization of a new product idea was not raised by the court.

Plaintiffs also cite to Panther Systems II, Ltd. v. Panther Computer Systems, 783 F. Supp. 53, 66 (E.D.N.Y. 1991), for the proposition that what matters is not "how a defendant could have acquired the information, but rather upon how he did in fact actually acquire it." However, this was mentioned in the court's analysis of an unfair competition claim, not, as Plaintiffs suggest, a trade secret claim. See id. Accordingly, it is not relevant to this Court's analysis.

12

misappropriation of an idea), aff'd, 129 F. App'x 874 (5th Cir. Mar. 17, 2005), whereas New York does, see, e.g., Gary Friedrich Enters., L.L.C. v. Marvel Enters., Inc., 713 F. Supp. 2d 215, 228 (S.D.N.Y. 2010); cf. Lehman v. Dow Jones & Co., 783 F.2d 285, 299 (2d Cir. 1986) ("A cause of action may arise with respect to information that does not qualify as a trade secret if the information is disclosed in confidence and later used in a manner that breaches the confidence." (collecting cases applying New York law)). Accordingly, this Court will not disregard applicable law from this Circuit in favor of cases that are neither controlling nor persuasive.

Finally, Plaintiffs assert that there is a question of fact regarding whether such information would have become public upon marketing and that they should be able to present evidence on the issue at trial. Plaintiffs, however, have failed to come forward with the evidence that they believe the Court overlooked or that may not have been presented in opposition to Defendant's motion for summary judgment in support of their argument that their alleged trade secret would remain secret post-commercialization. The Court will not overturn its prior decision on mere speculation that Plaintiffs may produce sufficient evidence at trial to create an issue of fact.

The Court also notes that there is no manifest injustice requiring reversal of its prior order, as Plaintiffs

13

may proceed to trial on their misappropriation of an idea claim, which Plaintiffs conceded is based on misappropriation of the same "novel idea" at issue in Plaintiffs' trade secret claim. (See Def. Supp. 56.1 Stmt., Docket Entry 311, ¶ 13 (citing Walsh Decl. Ex. 7, Zivic Dep. 48-49).)

## CONCLUSION

Accordingly, as Plaintiffs have failed to present any new evidence or controlling law that might be expected to alter the Court's Summary Judgment Order, Plaintiffs' motion for reconsideration is DENIED.

Further, the Court previously granted the parties fourteen days from the date of the Summary Judgment Order to show cause why that document should remain under seal. More than fourteen days have passed, and the Court has yet to receive any briefing on the issue from either party. Accordingly, the Clerk of the Court is directed to UNSEAL the Summary Judgment Order at Docket Entry 347.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: May __1__, 2013
       Central Islip, NY