UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
SCIENTON TECHNOLOGIES, INC.,

                        Plaintiff,

        -against-                                MEMORANDUM & ORDER
                                                 04-CV-2652(JS)(ARL)
COMPUTER ASSOCIATES INTERNATIONAL,
INC.,

                        Defendant.
-------------------------------------X
APPEARANCES
For Plaintiff:          Alexander Orlowski, Esq.
                        Dennis P. Stolle, Esq.
                        Lynn C. Tyler, Esq.
                        Matthew S. Barr, Esq.
                        Robert Dean MacGill, Esq.
                        Barnes & Thornburg LLP
                        11 South Meridian Street
                        Indianapolis, Indiana 46204

                        Panagiota Betty Tufariello, Esq.
                        The Law Offices of P.B. Tufariello, P.C.
                        25 Little Harbor Road
                        Mt. Sinai, New York 11766

For Defendant:          Jonathan N. Francis, Esq.
                        Michael D. Schissel, Esq.
                        Anthony D. Boccanfuso, Esq.
                        Carmela T. Romeo, Esq.
                        Erik Christopher Walsh, Esq.
                        Pamela Addison Miller, Esq.
                        Arnold & Porter LLP
                        399 Park Avenue
                        New York, New York 10022

                        Kevin Patrick Mulry, Esq.
                        Sarah M. Baird, Esq.
                        John P. McEntee, Esq.
                        Farrell Fritz, P.C.
                        1320 RXR Plaza
                        Uniondale, New York 11556

SEYBERT, District Judge:

Scienton Technologies, Inc. ("Scienton" or "Plaintiff") filed this lawsuit against Computer Associates International, Inc. ("CA" or "Defendant") alleging that CA stole Scienton's idea for security-related software products.  On November 12, 2015, the jury delivered a verdict in favor of Scienton.  (Docket Entry 545.)

Three motions are pending before the Court.  First, CA moves to set aside the jury verdict under Federal Rule of Civil Procedure 50(b).  (Docket Entry 557.)  Second, Scienton moves for a new trial to determine compensatory damages.  (Docket Entry 551.)  Third, Scienton moves for damages relating to prejudgment interest.  (Docket Entry 554.)  For the following reasons, this Court GRANTS CA's motion based on Scienton's lack of standing, and thus Scienton's motions are DISMISSED AS MOOT.

### BACKGROUND[1]

The Court assumes familiarity with the facts of this case, which are chronicled in the Court's previous orders.  (See generally Sept. 25, 2012 Order, Docket Entry 347; Jan. 7, 2015 Order, Docket Entry 395.)  The salient details are discussed below.

CA is a New York software company, and Scienton is a Canadian software development and consulting company.  (See SAC,

---

[1] These facts are drawn from the Second Amended Complaint ("SAC"), the testimony at trial ("Tr."), and CA's trial exhibits, which are labeled "DX."

Docket Entry 82, ¶¶ 2, 5.)  Scienton has maintained that it is the successor-in-interest to fellow Canadian corporation, NI Group Inc. ("NI Group"), which is the successor-in-interest to Secure-IT Inc. ("Secure-IT").  (SAC ¶¶ 2-3.)  This action was filed by Secure-IT, NI Group, and Scienton; however, before closing arguments, Plaintiff's counsel selected Scienton as its "proper plaintiff" and voluntarily terminated Secure-IT and NI Group as Plaintiffs in this case.  (Tr. 2166:12-17.)

By way of background, NI Group conveyed its idea for security-related software products (the "Idea") to CA in 2000. (SAC ¶¶ 53, 57.)  Four years later, this action ensued.  Plaintiffs argue, in pertinent part, that CA misappropriated the Idea and repurposed it for CA's new security programs.  After a decade-long dispute, three claims were left for trial: (1) breach of a Mutual Non-Disclosure Agreement ("MNDA"), (2) misappropriation of an idea, and (3) unfair competition.

I.   Scienton's Evidence at Trial

The trial began in October 2015.  Before jury selection, CA's counsel advised the Court that Scienton may lack standing to bring this case and stated:

> We have seen in the record in this case that
> Secure-IT was merged into NI Group.  We've
> never seen anything that suggests that NI
> Group was merged into Scienton or that
> Scienton somehow became the successor in
> interest to NI Group. . . .  I don't know how
> we can describe [the plaintiffs] as related

when <u>there's nothing to suggest that Scienton</u>
<u>is a proper party in this case</u> . . . .

(Tr. 9:24-10:12 (emphasis added).)[2]   Scienton's counsel
acknowledged that it was Scienton's responsibility to prove the
connection at trial.  (Tr. 11:3-5 and 17-18.)

During the trial, Scienton presented evidence--for the
first time--that in 2000, NI Group entered into an oral agreement
with Scienton to transfer certain assets (the "Agreement").
In 2004, the parties memorialized this Agreement in writing:

> This agreement is to specify that NI-Group
> sold all its contacts, contracts, and clients
> to Scienton Technologies Inc for the total of
> $10.00 CDN.  Therefore Scienton has inherited
> all NI Group's contacts, contracts, clients
> and all future revenues and profits arising
> from the said contracts, contacts, and clients
> will go to Scienton Technologies Inc.

(Agreement, DX DR, Pl.'s Decl. Ex. 13, Docket Entry 566-14, at 2
(emphasis omitted).)[3]  Two trial witnesses played an important role
in this agreement: (1) Predrag Zivic, a then-executive of
Scienton, and (2) Jovan Miladinovic, a then-executive of NI Group.

---

[2] The following is a list of the transcripts that the Court cites
throughout this Order: 10/20/15 pp. 1-95 D.E. 559; 10/27/15
pp. 535-754; 10/29/15 pp. 1008-1218; 11/6/15 pp. 2129-2213;
11/9/15 pp. 2214-2384; and 11/12/15 pp. 2416-28.  With the
exception of the October 20th transcript, the remaining
transcripts are currently unavailable on the Electronic Case
Filing System ("ECF").  To ensure completeness of the electronic
record, CA is ORDERED to file the remaining portions of the
transcript on the docket.

[3] For the purposes of this Order, the Court will use the page
numbers generated by ECF when referring to any trial exhibits.

(See Agreement at 2.)  Scienton's lead witness, Mr. Zivic, clarified the scope of the Agreement during his testimony:

> Q:  And in [the Agreement], NI Group transfers its contracts, clients and future revenues and profits to Scienton. Right?
>
> A:  Yes.
>
> Q:  What was not transferred was any claim NI Group had in this litigation, right?
>
> A:  No.
>
> Q:  That's correct, right?
>
> A:  That's correct, yes.

(See Tr. 682:20-683:4.)  In fact, Mr. Miladinovic, a party to the Agreement, retained the right to use the "NI Group" name. (Tr. 1025:21-22.)

Also relevant to this case is that Scienton and NI Group are apparently two distinct entities.  Mr. Zivic testified that after NI Group made its transfer to Scienton under the Agreement, he is unaware of what Mr. Miladinovic did with NI Group. (Tr. 596:19-597:25.)  The following exchange between CA's counsel and Mr. Zivic illustrates this point:

> Q:  Does the NI Group exist today?
>
> A:  I don't know.
>
> Q:  Who would know?
>
> A:  Jovan [Miladinovic].

* * *

```
Q:    So today NI Group is not an entity that
      is merged into Scienton.  Correct?

A:    It was merged with a [sic] clients and
      stuff.  What Mr. Miladinovic decided to
      do afterwards, I don't know.

Q:    But it's fair to say that NI Group is
      currently not merged into Scienton, fair?

A:    No.

Q:    That's correct, right?

A:    I think so.
```

(Tr. 596:2–5, 597:20–598:5.)

## II. CA's Rule 50(a) Motion

After both parties had rested but before the case went to the jury, CA moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).  (Docket Entry 523.)  The Court then scheduled oral argument to hear the Rule 50 motion, (Tr. 1874:22–23), but before that hearing took place, CA filed a letter motion identifying the grounds on which it was moving.  (See Def.'s Nov. 5, 2015 Ltr., Docket Entry 533.)  CA argued, in pertinent part, that (1) Plaintiffs failed to prove damages on their breach of the MNDA claim and (2) Scienton lacked standing. (See Def.'s Nov. 5, 2015 Ltr. ¶¶ 4, 5(a).)  Ultimately, the Court dismissed the MNDA claim because Scienton "elected to not present evidence of compensatory damages" and incorrectly pursued damages under an unjust enrichment theory.  (See Tr. 2172:11–14, 2206:1–13; Nov. 6, 2015 Min. Order, Docket Entry 534.)

As for the standing issue, Scienton's counsel requested that the Court limit the verdict sheet to a single plaintiff: Scienton. (Tr. 2162:9–11.) CA's counsel then reserved its arguments on this issue:

> SCIENTON: [W]hat we want to do is have one verdict form, and have it be for Scienton, and on the basis that Scienton owns the claim as it was transferred.
>
> * * *
>
> CA: [T]he contract does not [ ] include claims, and the claim is not included. That may be an issue. But if [Scienton's counsel] want[s] to pick one plaintiff, fine. But I don't want to suggest that, I want to make sure we're reserving on that.

(Tr. 2162:9–11, 2164:11–15.) The Court granted Scienton's request and dismissed Secure-IT and NI Group:

> THE COURT: You've selected a plaintiff and you may be subjected to a standing issue as the defendant[] argue[s].

(Tr. 2164:9–15, 2166:16–17.) To reflect this change, the verdict sheet stated that the jury is "directed to assume that Scienton Technologies, Inc. is the proper Plaintiff" and that "[t]he Court will determine if Scienton Technologies, Inc. is the proper

Plaintiff after the verdict, if necessary." (Verdict Sheet, Court Exhibit 12, Docket Entry 547, at 2.)[4]

III. <u>The Pending Motions</u>

On November 12, 2015, the jury delivered a verdict in favor of Scienton. (Docket Entry 545.) CA then reserved its rights to file post-trial motions within the permitted timeframe. (Tr. 2427:4-13.)

CA now renews its motion for judgment as a matter of law. (Docket Entry 557.) CA asserts, in pertinent part, that the Court no longer has subject matter jurisdiction because Scienton lacks standing. (Def.'s Br., Docket Entry 558, at 2-6.) As CA argues, neither the plain text nor the surrounding circumstances of the Agreement indicate that NI Group transferred any tort claims or intellectual property rights, such as the Idea, to Scienton. Rather, the Agreement transferred only NI Group's contacts, contracts, clients, and any associated future revenues and profits. (Def.'s Br. at 5.) In other words, NI Group--not Scienton--suffered an injury, and the Agreement failed to assign NI Group's claims against CA to Scienton.

Scienton shrugs off this standing requirement by invoking the "real party in interest" theory under Federal Rule of Civil Procedure 17. (Pl.'s Br., Docket Entry 563, at 4-9.)

---

[4] The Verdict Sheet can be found at Docket Entry 547 at 1-8.

Scienton argues that "the real issue is whether Scienton has a valid assignment of 'the idea' from NI Group and thus is the real party in interest." (Pl.'s Br. at 4.) First, Scienton asserts that CA waived this real party in interest argument by failing to include it in CA's Rule 50(a) application. (Pl.'s Br. at 3–4.) Second, Scienton contends that "NI Group transferred all it had with respect to CA," including NI Group's tort claims and intellectual property rights, and thus Scienton is the proper plaintiff. (Pl.'s Br. at 9.)

Separately, Scienton filed a motion for a new trial to determine compensatory damages and another motion for damages related to prejudgment interest. (Docket Entries 551, 554.) These motions, however, are moot, as the Court must grant CA's motion for lack of standing.

DISCUSSION

As a preliminary matter, the Court will address CA's motion first, as the standing issue implicates this Court's subject matter jurisdiction. First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 377 (S.D.N.Y. 2002); see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (recognizing that a court must consider a motion to dismiss for lack of subject matter jurisdiction first because, if granted, "the accompanying defenses and objections become moot and do not need to be determined" (internal quotation marks and

citations omitted)).  Based on the facts above, and further elaborated below, the Court finds that Scienton lacks standing to maintain this suit.

I.  Rule 50(b) Standard

"Under Rule 50(a), a party may move for judgment as a matter of law . . . during trial at any time prior to the submission of the case to the jury."  Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 286 (2d Cir. 1998) (citing FED. R. CIV. P. 50(a)(2)).  In doing so, the party must "'specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.'"  Id. (quoting FED. R. CIV. P. 50(a)(2)).  The purpose of this specificity requirement is "'to give the other party an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury.'"  Id. (quoting Baskin v. Hawley, 807 F.2d 1120, 1134 (2d Cir. 1986)).  If the Rule 50(a) motion is denied, the movant may file a Rule 50(b) motion to renew its arguments after the jury verdict.  Id.  Thus, any arguments not included in the Rule 50(a) application are waived.  See Protostorm, LLC v. Antonelli, Terry, Stout & Krauss, LLP, No. 08-CV-0931, 2015 WL 3605143, at *3 (E.D.N.Y. June 5, 2015), appeal docketed, No. 15-2199 (2d Cir. July 10, 2015).

When reviewing a Rule 50 motion, courts must consider the evidence in the light most charitable to the non-moving party.

10

Tolbert v. Queens Coll., 242 F.3d 58, 69 (2d Cir. 2001) (citing Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 367 (2d Cir. 1988)). Put differently, "'the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached . . . .'" Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151, 120 S. Ct. 2091, 2110, 147 L. Ed. 2d 105 (2000)).

Before reaching the Article III challenge, the Court must first dispense with Scienton's waiver argument. To begin, Scienton argues that CA failed to reserve its standing argument. (Pl.'s Br. at 3-4.) However, at the close of all evidence, CA filed a letter motion identifying the grounds on which it was moving for judgment as a matter of law and expressly addressed the issue of Scienton's standing. (See Def.'s Nov. 5, 2015 Ltr. ¶ 5(a).) What is more, the Court specifically reserved its decision on the standing argument. (Tr. 2332:6-8 ("[T]he Court will determine if Scienton Technology, Inc., is a plaintiff after the verdict, if necessary.").)

The Court acknowledges that CA failed to comply with Local Civil Rule 7.1, which requires that motion papers contain "[a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion . . . ." Local Civ. R. 7.1. Specifically, at the close of Plaintiff's case-in-

chief, CA submitted a memorandum of law that focused on certain issues, but did not include an argument based on Scienton's standing. (Def.'s Rule 50(a) Br., Docket Entry 524.) Then at the close of all evidence, CA submitted its letter motion, which challenged Scienton's standing, among other things, but lacked any support based on fact or case law. (See generally Def.'s Nov. 5, 2015 Ltr.) Nevertheless, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001); Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1048 (2d Cir. 1991) (noting that a district court has "the inherent power to decide when a departure from its Local Rules should be excused or overlooked" (citations omitted)). Thus, since the parties were "fairly and adequately apprised of the nature and basis of the application," the Court will consider CA's Rule 50(a) motion. See Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc., No. 10-CV-0347, 2013 WL 5725987, at *2 (E.D.N.Y. Oct. 21, 2013). The Court will now turn to CA's standing argument.

## II. Article III Standing

"Standing is 'the threshold question in every federal case,' and implicates the Court's subject matter jurisdiction." Cohan v. Movtady, 751 F. Supp. 2d 436, 439 (E.D.N.Y. 2010) (quoting Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 (2d Cir. 2008)). To establish standing under Article III, a would-be litigant must

12

show, among other things, that he or she "'suffered an injury in fact.'" Digizip.com, Inc. v. Verizon Servs. Corp., --- F. Supp. 3d ----, 2015 WL 6076532, at *2 (S.D.N.Y. Oct. 16, 2015) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)). Unless that showing is made, "a court has no subject matter jurisdiction to hear [the] claim." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005).

As the "party invoking federal jurisdiction," Scienton "bears the burden of establishing these elements." Lujan, 504 U.S. at 561, 112 S. Ct. at 2136. Further, standing must be "assessed as of the time the lawsuit is brought." Comer v. Cisneros, 37 F.3d 775, 787 (2d Cir. 1994) (citations omitted).

As an initial point, NI Group--not Scienton--suffered an injury in fact because NI Group was the plaintiff that conveyed the Idea to CA. But that fact is not a complete roadblock for Scienton because "[c]ourts may permit a party with standing to assign its claims to a third party, who will stand in the place of the injured party and satisfy the constitutional requirement of an 'injury-in-fact.'" W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 107 (2d Cir. 2008) (citation omitted). The question, then, is whether NI Group successfully assigned the Idea and any tort claims to Scienton under the Agreement. The Court will use Canadian law to resolve this issue because both

Scienton and NI Group are Canadian corporations and they executed the Agreement in Canada. (SAC ¶¶ 2-3; Agreement at 2); see also Fredericks v. Chemipal, Ltd., No. 06-CV-0966, 2007 WL 1310160, at *3 (S.D.N.Y. May 3, 2007) (Under a choice of law analysis, "factors to consider include where the contract was signed; the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties.").

   A.   Assignment

      Canadian courts, like their American counterparts, are reluctant to "stray beyond the four corners of [an] agreement" where the parties' intentions are clear and unambiguous. KPMG Inc. v. Canadian Imperial Bank of Commerce, 1998 CarswellOnt 4422 at ¶ 5 (Can. Ont. C.A.) (WL). Yet the emerging trend is to consider the contractual language alongside the "surrounding circumstances of the agreement, whether or not any ambiguity is found." Canadian Encyc. Digest IX.2.(b)--Contracts § 565 (collecting cases). This approach reflects the understanding that "[n]o contracts are made in a vacuum: there is always a setting in which they have to be placed." Ky. Fried Chicken Can. v. Scott's Food Servs. Inc., 1998 CarswellOnt 4170 at ¶ 25. (Can. Ont. C.A.) (WL) (internal citation omitted). It bears emphasizing, however, that the surrounding circumstances "must never be allowed to overwhelm the words of that agreement" and "courts cannot use them to deviate from the

text such that the court effectively creates a new agreement."
<u>Creston Moly Corp. v. Sattva Cap. Corp.</u>, 2014 CarswellBC 2267 at
¶ 57 (Can. S.C.C.) (WL).

Under Canadian law, both intellectual property rights
and tort claims are assignable.[5]  No magic words are required, but
the parties must at least evince an intent to transfer their claims
or rights.  <u>See</u>, <u>e.g.</u>, <u>Int'l Powertech Sys. Inc. v. Chato</u>, 1992
CarswellBC 1458 at ¶¶ 15, 37 (Can. B.C. S.C.) (WL) (upholding an
agreement that transferred all "right[s], title and interest in
and to all applications and uses of [an invention] including all
patents, patents pending," and so on); <u>Fredrikson v. Ins. Corp. of
B.C.</u>, 1986 CarswellBC 131 at ¶¶ 3, 19, 42 (approving an assignment
that conferred "any and all rights of action or actions" the
assignor possessed arising out of a car accident) (Can. B.C. C.A.)
(WL), <u>affirmed</u>, 1988 CarswellBC 759 (Can. S.C.C.) (WL).

Here, all roads lead to the same conclusion.  When
considering both the plain text and the surrounding circumstances
of the Agreement, it is clear that only contractual rights were

---

[5] <u>See</u>, <u>e.g.</u>, Canadian Encyc. Digest X.2--Patents § 530 ("The
Patent Act now provides that every patent shall be assignable in
law, either as to the whole interest or as to any part thereof,
by an instrument in writing."); <u>PSC Indus. Servs. Inc. v.
Ontario (Ministry of the Env't)</u>, 2005 CarswellOnt 3452 at ¶ 9
(Can. Ont. C.A.) (WL) (permitting the assignment of tort claims,
for example, "where the assignee has either a pre-existing
property interest in the enforcement of the claim or a
legitimate commercial interest in its enforcement").

transferred, not any tort claims or intellectual property rights.
Thus, Scienton is not an aggrieved party and does not have standing
to maintain this suit.[6]

Looking first to the plain language, the Court notes
that the Agreement does not expressly assign any causes of action
based on tort or intellectual property rights from NI Group to
Scienton:

> This agreement is to specify that NI-Group
> sold all its contacts, contracts, and clients
> to Scienton Technologies Inc for the total of
> $10.00 CDN.  Therefore Scienton has inherited
> all NI Group's contacts, contracts, clients
> and all future revenues and profits arising
> from the said contracts, contacts, and clients
> will go to Scienton Technologies Inc.

(See Agreement at 2.)  Rather, NI Group transferred only its
"contacts, contracts, [and] clients" and any associated "future

---

[6] Under New York law, the Court would reach the same conclusion.
As the Second Circuit made clear, "the assignment of the right
to assert contract claims does not automatically entail the
right to assert tort claims arising from that contact."  Banque
Arabe et Internationale D'Investissement v. Md. Nat'l Bank, 57
F.3d 146, 151 (2d Cir. 1995); Dexia SA/NV, Dexia Holdings, Inc.
v. Stanley, 41 Misc. 3d 1214(A), at *3, 980 N.Y.S.2d 275 (Sup.
Ct. N.Y. Cty. 2013) ("Under New York law, absent language
demonstrating an intent to do so, tort claims do not
automatically pass to an assignee.").  That same rationale
applies to intellectual property rights.  Shugrue v. Continental
Airlines, Inc., 977 F. Supp. 280, 284-86 (S.D.N.Y. 1997)
(finding no ambiguity in an agreement that transferred "all
right, title and interest . . . in and to all programs and
software"); see also Prince of Peace Enters., Inc. v. Top
Quality Food Mkt., LLC, 760 F. Supp. 2d 384, 391 (S.D.N.Y. 2011)
(concluding that the "assignment of a trademark under the Lanham
Act requires [a] sale or transfer of all rights in the
mark . . . ." (emphasis in original) (citations omitted)).

revenues and profits"--not all of NI Group's rights, title, and interest. (Agreement at 2.) Scienton argues that when the Agreement was reached, "NI Group did not have any claims against CA," (Pl.'s Br. at 8), but that fact does not mean that any tort claims were automatically conferred. Accord Canadian Encyc. Digest IX.2.(b)--Contracts § 564 ("Where . . . the wording of a written contract is clear and unambiguous, the contract itself should be all that is required to determine the parties' intentions."); cf. Commonwealth of Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., 25 N.Y.3d 543, 551, 35 N.E.3d 481, 486, 14 N.Y.S.3d 313 (2015) (applying New York law) (dismissing an assignor's argument that "in the absence of language to the contrary, [the] tort claims necessarily transferred to [the assignee]" because New York law requires "either some expressed intent or reference to tort causes of action, or some explicit language evidencing the parties' intent to transfer broad and unlimited rights and claims"). If the parties intended to transfer any tort claims or intellectual property rights, NI Group should have used explicit language to transfer all of its assets.[7] Thus, the plain text of the Agreement makes clear that only contractual rights were transferred.

---

[7] Cf. Int'l Design Concepts, LLC v. Saks Inc., 486 F. Supp. 2d 229, 237 (S.D.N.Y. 2007) (finding that an assignment included tort claims where one party transferred "all assets . . . without limitation" (emphasis in original)).

That conclusion accords with the surrounding circumstances. There is no indication that the parties discussed or negotiated an assignment of tort claims or intellectual property rights. Mr. Miladinovic, for example, testified that he retained the right to use the name NI Group. (Tr. 1025:21-22.) Elsewhere, he agrees that Scienton bought only some of NI Group's property. (Tr. 1066:11-14.) Mr. Zivic even admitted that the Agreement did not transfer any tort claims or intellectual property rights. (See Tr. 682:20-683:4.) Further undermining Scienton's position is that NI Group appears to be a separate entity.[8] (Tr. 596:2-5, 597:20-598:5.) Scienton asserts that Mr. Zivic and Mr. Miladinovic "no longer have any financial interest in this case" and that "they sold their interest in Scienton to [other parties]," (Pl.'s Br. at 9), but those facts do not change the analysis. The issue is whether NI Group transferred any tort claims or intellectual property rights to Scienton. NI Group did not do so.

---

[8] The Court also notes that the Agreement was made for ten Canadian dollars. (Agreement at 2.) In opening statements, however, Scienton's counsel estimated that the Idea could have been a "billion dollar product." (Tr. 59:18-19.) During closing arguments, he stated that the Idea was worth "over $60 million." (Tr. 2350:20-24.) Even if the value of the Idea changed between 2000 and 2015--that is, the time between the Agreement and the trial, this fact offers persuasive evidence that NI Group did not intend to transfer the Idea because of the wide disparity between the value of the Idea and the price of the Agreement.

All in all, Scienton cannot stand in the shoes of NI Group because the latter did not transfer its tort claims or intellectual property rights. Thus, Scienton has failed to meet the injury in fact requirement under Article III.

B. <u>Real Party in Interest</u>

Scienton cannot overcome this obstacle by invoking the "real party in interest" theory. (Pl.'s Br. at 4–9.) Rule 17 mandates that "[a] court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." FED. R. CIV. P. 17(a)(3). The purpose of Rule 17 is "'to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.'" <u>Cortlandt v. Street Recovery Corp. v. Hellas Telecomm.</u>, 790 F.3d 441, 421 (2d Cir. 2015) (quoting FED. R. CIV. P. 17 advisory committee's note, 1966 Amendment); <u>Gogolin & Stelter v. Karn's Auto Imports, Inc.</u>, 886 F.2d 100, 102 (5th Cir. 1989) (observing that Rule 17 "prevent[s] multiple or conflicting lawsuits by persons such as assignees, executors, or third-party beneficiaries, who would not be bound by res judicata principles").

"Confusions of standing with real-party-in-interest doctrine occur with some frequency." 13A Charles Alan Wright, et

al., _Federal Practice and Procedure_ § 3531 (3d ed. 2008); _accord_

_Bausch & Lomb Inc. v. Sonomed Tech. Inc._, 780 F. Supp. 943, 946–

47, 966 (E.D.N.Y. 1992) (observing that "'standing' requirements,

in terms of 'constitutional' and 'prudential' considerations, are

wholly distinct concepts"), _judgment aff'd in part & vacated in_

_part sub nom._ Bausch & Lomb Inc. v. Bressler, 977 F.2d 720 (2d

Cir. 1992).  For example, suppose a pedestrian is struck by a

driver.  To make matters worse, the pedestrian is forced to declare

bankruptcy before she is able to file suit.  Now it is important

to note that in the bankruptcy context, a trustee "has a duty to

collect and liquidate all nonexempt property from the bankrupt's

estate," which includes "any causes of action possessed by the

debtor."   _Seward v. Devine_, 888 F.2d 957, 963 (2d Cir. 1989)

(citations omitted).  Thus, in a lawsuit against the driver, the

pedestrian has standing because she suffered an injury from the

car accident, but the pedestrian's bankruptcy trustee is the real

party in interest because only the trustee can file a lawsuit.[9]

Under Rule 17 principles, courts in this Circuit have

held that a standing defect may be cured through the substitution

of another plaintiff "when a mistake has been made as to the person

entitled to bring suit and such substitution will not alter the

---

[9] _See_ Kotbi v. Hilton Worldwide, Inc., No. 11-CV-3550, 2012
WL 914951, at *4 (S.D.N.Y. Mar. 19, 2012), for a similar
example.

substance of the action." Park B. Smith, Inc. v. CHF Indus. Inc., 811 F. Supp. 2d 766, 773 (S.D.N.Y. 2011) (collecting cases); see also Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc., 888 F. Supp. 2d 478, 485–86 (S.D.N.Y. 2012); Berisford Metals Corp. v. M/V Copiapo, 653 F. Supp. 419, 421 (S.D.N.Y. 1986) ("A suit may proceed to its conclusion even where the plaintiff initially filing a complaint is not the real party in interest, if this party is subsequently joined.") (citations omitted). The Court also acknowledges that "the bar for granting leave to join real parties is low." Wiwa v. Royal Dutch Petroleum Co., No. 96-CV-8386, 2009 WL 464946, at *10 (S.D.N.Y. Feb. 25, 2009). In fact, "[a]ttorneys' mere ignorance, incompetence, or lack of diligence need not preclude granting joinder." Id.

Here, Scienton has not requested a ratification or substitution. Unlike most cases, NI Group was a plaintiff in this action from the start but was ultimately dismissed at the end of the trial in favor of Scienton. (Tr. 2166:16–17.) But even if Scienton could request that the Court substitute NI Group, "a reasonable time has been allowed for [NI Group] to ratify, join, or be substituted into the action." See FED. R. CIV. P. 17(a).

The Second Circuit has recognized that "when defendants assert that a party other than plaintiff has standing, their unspoken premise [is] that [plaintiffs] lacked standing because the non-party remained . . . the real party in interest." Abu

Dhabi, 888 F. Supp. 2d 478, 485-86 (S.D.N.Y. 2012) (alterations in original; internal quotation marks and citation omitted). CA alerted Scienton of its lack of standing multiple times throughout the trial. (See, e.g., Tr. 9:24-10:12 (before jury selection); 682:20-683:4 (during Mr. Zivic's cross-examination); 2164:11-16 (before closing arguments).) On that basis, Scienton had ample opportunity throughout the trial to coordinate its plaintiffs.[10] Thus, Rule 17 could not save Scienton's case.

Digizip.com, Inc. v. Verizon Services Corp., a case relied upon by Scienton, is not to the contrary. See 2015 WL 6076532 at *5. There, Digizip agreed to resell Verizon's telephone services under a service agreement that exempted Digizip from paying certain surcharges and taxes. Digizip, however, accidentally paid these exemptions. Before learning of the overpayments, Digizip sold its business to a third-party. When Digizip later filed suit against Verizon to receive a credit for the overpayments, Verizon moved to dismiss the claims based on Digizip's lack of standing. Id. at *1.

Ultimately, the U.S. District Court for the Southern District of New York allowed the third-party to assign the claims back to Digizip, in part, because "the factual and legal

---

[10] As discussed above, the Agreement is free from ambiguity; only contractual rights were transferred. Thus, Scienton was likely the proper plaintiff for the now-dismissed MNDA claim, but NI Group is the proper plaintiff for the remaining tort claims.

allegations of the complaint would remain unaltered if the suit continues." Id. at *7 (internal quotation marks and citation omitted). As the Southern District noted, "the concern over who is the real party in interest under Fed. R. Civ. P. 17(a) addresses only the prudential aspect of the standing rule, and therefore . . . the application of Rule 17 does not implicate Article III standing." Id. at *6. But critically, that "prudential strand of the standing doctrine" was not present in that case because Digizip "'suffered an injury in fact'--that is, it erroneously paid certain taxes and surcharges from which it was exempt." Id. at *5. In other words, Digizip.com had no issue with standing requirements; this case does. Scienton did not suffer an injury, nor did the Agreement transfer any tort claims or intellectual property rights to allow Scienton to stand in the shoes of NI Group.[11]

---

[11] The Court is mindful of the intra-district split on this issue. Compare Clarex Ltd. v. Natixis Secs. Am. LLC, No. 12-CV-0722, 2012 WL 4849146, at *7–8 (S.D.N.Y. Oct. 12, 2012) ("'[W]hile Rule 17(a) allows for the substitution of a real party in interest, a plaintiff must have Article III standing at the outset of the litigation.'" (quoting In Re SLM Corp. Sec. Litig., 258 F.R.D. 112, 115 (S.D.N.Y. 2009))) with In re Vivendi Universal, S.A. Secs. Litig., 605 F. Supp. 2d 570, 584 (S.D.N.Y. 2009) ("[A] standing defect at the commencement of suit does not require dismissal of the action with prejudice."). Likewise, the U.S. Court of Appeals for the Sixth Circuit has held that if a plaintiff lacks standing at the outset of the litigation, he or she may not "make a motion to substitute the real party in interest." Zurich Ins. Co. v. Logitrans, Inc., 297 F.3d 528, 531 (6th Cir. 2002). The Second Circuit, however, has

Furthermore, other decisions cited by Scienton do not involve parties that lacked standing under Article III. See, e.g., Ensley v. Cody Res., Inc., 171 F.3d 315, 319 (5th Cir. 1999) ("[The plaintiff] suffered a concrete injury sufficient to meet the constitutional justiciability requirement."); Malamud v. Sinclair Oil Corp., 521 F.2d 1142, 1152 (6th Cir. 1975) ("[T]he district court correctly concluded that this particular group of plaintiffs had standing."); Iowa Pub. Serv. Co. v. Med. Bow Coal Co., 556 F.2d 400, 405 (8th Cir. 1977) ("[A]ll four plaintiffs are real parties in interest and have standing to maintain the suit."); K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1154 n.7 (10th Cir. 1985) ("[The plaintiff] had standing to bring the fraudulent misrepresentation claim against defendants.").

In sum, Scienton has not met its burden to establish Article III standing, and thus, the Court is deprived of subject matter jurisdiction. CA's motion to set aside the jury verdict under Federal Rule of Civil Procedure 50(b) is GRANTED, and it follows that the Court need not address Scienton's motions, as they are now moot.

CONCLUSION

Defendant's motion for judgment as a matter of law (Docket Entry 557) is GRANTED, and Plaintiff's motions (Docket

---

recognized that Zurich's categorical approach has been "met with some criticism." Cortlandt, 790 F.3d at 423.

Entries 551, 554) are DISMISSED AS MOOT.  Also, with the exception of the October 20th transcript, the remaining trial transcripts are currently unavailable on the Electronic Case Filing System. To ensure completeness of the electronic record, Defendant is ORDERED to file the remaining portions of the transcript on the docket.  After Defendant has done so, the Clerk of the Court is directed to mark this matter CLOSED.


                              SO ORDERED.


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated:     May   17  , 2016
           Central Islip, New York